UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| KAMPS, INC., et al. | ) | |
| | ) | |
| Plaintiffs / Counter Defendants, | ) | No. 5:18-CV-430-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION & ORDER |
| MUSTANG AVIATION, INC., | ) | |
| | ) | |
| Defendant / Counter Claimant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Mustang Aviation, Inc., moved to dismiss Counts 2, 3, and 4 of Plaintiffs' Complaint. DE #9 (Motion). Kamps, Inc., and Kamps Air, LLC (collectively, Kamps), moved to dismiss Mustang's Counterclaim. DE #11 (Motion). The matters are fully briefed, *see* DE ##10, 12, 16, 17, and ripe for consideration. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Mustang's motion (DE #9) and wholly **GRANTS** Kamps's (DE #11). The Court dismisses Complaint Count 2 and the totality of the Counterclaim, but permits Complaint Counts 3 and 4 to proceed.

I.  **MUSTANG'S MOTION TO DISMISS**

This case arises from a disputed aircraft inspection. In late 2017 / early 2018, Kamps became interested in purchasing an aircraft for business purposes. DE #1, at ¶ 9. As part of the procurement process, Kamps engaged Mustang to conduct "a pre-purchase inspection" of a particular aircraft. *See id.* at ¶¶ 10-18. Mustang ultimately did an inspection, invoiced Kamps $2,258.04, and provided a "Pre-Purchase Examination Report." *Id.* at ¶¶ 19-20. Kamps paid the bill, *id.* at ¶ 22, and "in reliance on" the Pre-Purchase Examination Report, bought the aircraft. *Id.* at ¶ 23. So far, so good.

1

Kamps alleges, however, that after the purchase, "the Aircraft was examined, and it was discovered that there are more than one-hundred and thirty (130) Discrepancies on the Aircraft totaling approximately One Hundred Thousand Dollars ($100,000) in parts and labor that should have been discovered during the course of any reasonable pre-purchase inspection." DE #1, at ¶ 24. Kamps alleges that it "relied on Mustang's Pre-Purchase Examination Report and inspection in completing the purchase of the Aircraft at a price of $348,000.00," and that had it "known about the Discrepancies, Kamps would not have proceeded with the purchase of the Aircraft at that price." *Id.* at ¶¶ 27-28. Kamps also claims other damages—namely, that it "employ[ed] a local aircraft maintenance facility to repair the Aircraft to airworthy standards" and "charter[ed] another aircraft to fulfill pre-planned, scheduled company flights" during the time "the Aircraft [was] in maintenance." *Id.* at ¶¶ 29-30.

Based on these allegations, Kamps asserted four causes of action against Mustang: (1) breach of contract, (2) promissory estoppel, (3) fraud, and (4) negligent misrepresentation. Mustang seeks dismissal of Counts 2-4.[1]

---

[1] A potential concern is that Mustang filed the 12(b)(6) motion *after* answering. *Compare* DE #8 (Answer), *with* DE #9 (Motion). Rule 12(b) plainly says that a "motion asserting any of these defenses must be made *before pleading*." Fed. R. Civ. P. 12(b) (emphasis added). Denial of the motion on this basis is not relief Kamps seeks, and district courts do, on occasion, permit post-Answer 12(b)(6) motions. *See, e.g.*, *Gillespie v. City of Battle Creek*, 100 F. Supp. 3d 623, 628 (W.D. Mich. 2015) (concluding that considering "a post-answer Rule 12(b)(6) motion is appropriate in this case" (collecting cases)); *Ortiz v. Holmes*, 157 F. Supp. 3d 692, 695 (N.D. Ohio 2016) (describing "the practice of district courts within the Sixth Circuit of permitting post-answer Rule 12(b)(6) motions"). Mustang asserted a 12(b)(6)-like defense in its Answer, *see* DE #8, at ¶ 1, and Kamps identified no prejudice, vis-à-vis case posture, that would arise from consideration of the motion. *See Ortiz*, 157 F. Supp. 3d at 695; *Gillespie*, 100 F. Supp. 3d at 628. Additionally, the Court notes that the same standard of review applies to a Rule 12(c) motion; that provides an alternative analytical path. *See Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008).

Under Fed. R. Civ. P. 12(b)(6), a party may seek dismissal based on an alleged "failure to state a claim upon which relief can be granted." Faced with such a motion, the Court views the relevant assertions in the light most favorable to the non-moving party, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in the non-moving party's favor. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007)); *Brent v. Wayne Cnty. Dep't of Human Servs.*, 901 F.3d 656, 675-76 (6th Cir. 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Id.* A "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1965. The Court need not accept the verity of legal conclusions. *Id.*

*First*—promissory estoppel. Mustang's argument that promissory estoppel is unavailable in the presence "of an otherwise enforceable contract" is correct. *See, e.g.*, *Derby City Capital, LLC v. Trinity HR Servs.*, 949 F. Supp. 2d 712, 729-30 (W.D. Ky. 2013) (collecting cases).[2] Kamps, noting Mustang's concessions on relevant contract topics, does not protest Count 2 dismissal. *See* DE #10, at 4. Accordingly, the Court dismisses Complaint Count 2.

---

[2] The parties agree that substantive Kentucky law applies in this diversity case; the Court, accordingly, undertakes no independent choice-of-law analysis. *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003).

3

*Second*—fraud and negligent misrepresentation. Mustang seeks dismissal of Counts 3 and 4 based (solely) on application of the economic loss rule. DE #9-1, at 7-12. Kamps opposes. DE #10, at 5-9; *see also* DE #12, at 3-11.

Kentucky's economic loss rule "prevents the commercial purchaser of a product from suing in tort to recover for economic losses arising from the malfunction of the product itself, recognizing that such damages must be recovered, if at all, pursuant to contract law." *Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 733 (Ky. 2011). The "rule recognizes that economic losses, in essence, deprive the purchaser of the benefit of his bargain and that such losses are best addressed by the parties' contract and relevant provisions of Article 2 of the Uniform Commercial Code." *Id.* at 738. "Three policies support applying the economic loss doctrine to commercial transactions: (1) it maintains the historical distinction between tort and contract law; (2) it protects parties' freedom to allocate economic risk by contract; and (3) it encourages the party best situated to assess the risk of economic loss, usually the purchaser, to assume, allocate, or insure against that risk." *Id.* at 739 (quoting *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)).

The Court, on full consideration of the parties' arguments, joins the unanimous chorus of judicial voices forecasting that the Kentucky Supreme Court would not likely expand the economic loss rule to *service* contracts, as Kamps had with Mustang, for the reasons cogently stated in the cases cited below.

Over thirteen years ago, the late Judge Heyburn reasoned:

Virtually every classic description of the economic loss rule pertains to and often limits its application to the sale of products. The cases make this distinction in order to preserve the distinction between the remedies available under the U.C.C. and those available in tort. Such a distinction

> would be immaterial here because the U.C.C. does not govern services. In the context of selling a product, the economic loss rule can limit its application to those circumstances in which the damage is solely to the product. Where services are involved, the rule could not be so easily or clearly limited. In addition, one providing a negligent service that damages related property appears to have breached a duty, rather than having breached a warranty. In such circumstances, the injured party has not suffered purely economic losses, but property damage recoverable in tort. All of these reasons suggest the conceptual difficulty of applying the economic loss rule to services.
>
> None of the existing cases suggest that an expansion of the rule is likely. . . . . This Court believes that it is on sound ground in predicting that Kentucky courts would apply the economic loss rule in its classic definition.

*Louisville Gas & Elec. Co. v. Continental Field Sys., Inc.*, 420 F. Supp. 2d 764, 769-70 (W.D. Ky. 2005). The Court, in light of the subsequent years of experience and doctrinal development, joins this prediction. *See also Corizon Health, Inc. v. CorrecTek, Inc.*, No. 5:17-CV-35-TBR, 2018 WL 2768883, at *9-10 (W.D. Ky. June 8, 2018) (Russell, J.); *Rodrock v. Gumz*, No. 4:11CV-141-JHM, 2012 WL 1424501, at *4 (W.D. Ky. Apr. 24, 2012) (McKinley, J.); *NS Transp. Brokerage Corp. v. Louisville Sealcoat Ventures, LLC*, No. 3:12-CV-766-JHM, 2015 WL 1020598, at *5 (W.D. Ky. Mar. 9, 2015) (continuing to "find[] no evidence that Kentucky would expand the economic loss rule to contracts for services"); *State Farm Mut. Auto. Ins. Co. v. Norcold, Inc.*, 143 F. Supp. 3d 586, 588-89 (E.D. Ky. 2015) (noting that "federal courts in Kentucky have held . . . that the [economic loss rule] does not apply to the provision of services or service contracts") (Bertelsman, J.); *Pioneer Resources Corp. v. Nami Resources Co., LLC*, No. 6:04-465-DCR, 2006 WL 1778318, at *7 (E.D. Ky. June 26, 2006) ("find[ing] that the Kentucky Supreme Court would likely not extend the economic loss doctrine outside the products

liability, business purchase or construction cases") (Reeves, J.);[3] *Morris v. Tyson Chicken, Inc.*, No. 4:15-CV-77-JHM, 2015 WL 7188479, at *4-6 (W.D. Ky. Nov. 13, 2015) (collecting cases).[4]

*Giddings*'s foundational language—from the first sentence on—so suggests. *See, e.g.*, 348 S.W.3d at 733, 738 (adopting rule using "manufacturer," invoking the UCC, and referring pervasively to "products" and "product liability theories"). Indeed, *Giddings*, in defining the Kentucky conceptualization, all but held that service contracts are outside the economic loss rule's purview. *See id.* at 737-38 (reasoning that "the absence of a

---

[3] Indeed, a Note that *Giddings* found informative, *see* 348 S.W.3d at 736 n.3, states that service contracts are outside the "traditional" boundaries of the economic loss rule and that the "service contract debate has been most relevant in dealing with construction contracts." *See* Andrew Gray, *Drowning in a Sea of Confusion: Applying the Economic Loss Doctrine to Component Parts, Service Contracts and Fraud*, 84 Wash. U. L.R. 1513, 1524-25 & n.70 (2006), *available at* https://openscholarship.wustl.edu/cgi/viewcontent.cgi?article=1217&context=law_lawreview.

[4] Mustang's citation to *D.W. Wilburn, Inc. v. K. Norman Berry Associates, Architects, PLLC*, No. 2015-CA-1254-MR, 2016 WL 7405774 (Ky. Ct. App. Dec. 22, 2016), bears it no fruit. As Defendant recognizes, *see* DE #12, at 4, *Wilburn* expressly declined to address whether the economic loss rule applies to service contracts. *See* 2016 WL 7405774, at *6. Further, the court's conclusion that "the economic loss rule is not applicable to a negligent misrepresentation claim where there is no privity of contract" plainly does not address a situation where, as here, the parties had such privity. *See id.*; DE #12, at 4-5. A thin negative inference is no basis on which to make a doctrinal broad jump.
  *Nami Resources Co., LLC v. Asher Land and Mineral, Ltd.*, 554 S.W.3d 323 (Ky. 2018), which Mustang also cites, DE #12, at 9-11, is similarly unhelpful to it. *Nami*, like *Wilburn*, did not address whether Kentucky's economic loss rule applies to a service contract. Indeed, *Nami*, which arose in the context of a challenge to a punitive damage award and lease agreements governing natural gas extraction, explicitly noted that the economic loss rule may have different meanings "in other contexts." *See* 554 S.W.3d at 328, 335. Tellingly, California law, which *Nami* excerpted at length, also does not extend the economic loss rule to service contracts. *See, e.g.*, *Ladore v. Sony Computer Entm't Am., LLC*, 75 F. Supp. 3d 1065, 1075-76 (N.D. Cal. 2014) (citing, *inter alia*, *N. Am. Chem. Co. v. Superior Court*, 69 Cal. Rptr. 2d 466 (Ct. App. 1997)). The Court, though, makes no determination, in this context and on this record, about the availability of punitive damages in a case of this type.

'product'" in *Presnell*[5] "underscored [the economic loss rule's] inapplicability"); *see also id.* at 737 (noting that *Presnell* "moreover" involved a dispute "not over a product but rather the provision of construction services"); *id.* at 744-46 (contrasting a "manufacturer of a product" with businesses that "offer services" when applying Kentucky's economic loss rule to a negligent misrepresentation claim). The economic loss rule—Mustang's lone basis to seek dismissal of Counts 3 and 4—thus does not apply to bar the claims.[6]

Accordingly, the Court **GRANTS** DE #9 as to Count 2 and **DENIES** DE #9 as to Counts 3 and 4.

## II. KAMPS'S MOTION TO DISMISS

As relevant to Kamps's motion to dismiss Mustang's Counterclaim, the Court (flipping the postural script) recites the facts as follows: When Kamps executed the Work Request form, retaining Mustang to perform a pre-purchase inspection of the aircraft, Mustang informed Kamps that a "pre-purchase inspection" is narrower than an "annual inspection." DE #8, at 8 ¶¶ 6-7. Mustang alleges that it "informed representatives of the Plaintiffs of the difference between the two reports, and the different in cost between

---

[5] *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575 (Ky. 2004). The *Presnell* majority opinion did not mention the economic loss rule, but Justice Keller separately advocated for its adoption. *See id.* at 584 (Keller, J., concurring).

[6] The Court further notes that the fraud and negligent misrepresentation theories are here broader, on the facts and in concept, than the breach of contract assertion. Kamps alleges fraudulent representations as to Mustang's expertise and qualifications, in addition to the scope and product of the inspection. *See* DE #1, at ¶¶ 54-56. Kamps specifically alleges reliance by it on the results of Mustang's allegedly elided inspection and false information. *See id.* at ¶¶ 60 & 68. (Further, Mustang admitted it expected its report to induce Kamps to act. *See* DE #8, at ¶ 19). Even under Justice Keller's formulation in *Presnell* (and per Restatement § 552), if an independent duty undergirds a cause of action, the economic loss rule would not bar the claim. *See Presnell*, 134 S.W.3d at 589-90 (Keller, J., concurring).

them." *Id.* at ¶ 7. Kamps, per Mustang's allegations, did not want to pay a higher cost for an annual inspection and so chose the truncated pre-purchase inspection. *Id.* at ¶¶ 8-12.

No party disputes that the *Twombly / Iqbal* standard, described above, applies to consideration of the motion to dismiss the Counterclaim.[7] *See also, e.g.*, *DetailxPerts Franchise Sys., LLC v. TKTM Enters., LLC*, No. 18-11823, 2018 WL 58885503, at *1-2 (E.D. Mich. Nov. 9, 2018). The Counterclaim has two Counts; Kamps seeks dismissal of each. *See* DE #11, 16, 17.

*First*—breach of contract. Mustang alleges that a contract existed between it and Kamps for Mustang "to perform a limited 'Pre-Purchase Inspection' of the aircraft, limited to 25 hours of technician time." DE #8, at 9-10 ¶ 16. Mustang says that Kamps "specifically chose a manner of inspection of the airplane that was less costly" and that Kamps "chose not to authorize" an "Annual Inspection." *Id.* at 10 ¶ 17. "By attempting to require [in this action] Mustang to have performed work far more than that contemplated by the parties' agreement," Mustang contends, "the Plaintiffs have breached the contract." *Id.* at ¶ 18.

In Kentucky, to "prove a breach of contract, the complainant must establish three things: 1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009).

---

[7] Kamps, though purporting to raise a Rule 12(b)(1) issue, *see* DE ##11, at 1; 11-1, at 1-2, never appends much meat to that theory's bones. The Court, thus, treats DE #11 as solely a 12(b)(6) motion. The Court has jurisdiction to issue a declaratory judgment, even if the substantive "limits" of the Kentucky DJA counsel against it. *See Mammoth Med., Inc. v. Bunnell*, 265 S.W.3d 205, 210, 212 (Ky. 2008).

This is not a close call. Mustang fails to satisfactorily allege, at a minimum, breach of an extant contract. By any measure of logic, Kamps merely "*attempting* to require Mustang to have performed work far more than that contemplated by the parties' agreement," DE #8, at 10 ¶ 18, does not *actually* constitute a breach of that agreement. Mustang identifies, and the Court sees, no contract provision prohibiting Kamps from filing this lawsuit or contesting the meaning of, and Mustang's performance under, the agreement. Mustang does not contest that Kamps paid the invoice as billed, for the work actually done pursuant to the contract identified in Counterclaim ¶ 16. *See* DE #16, at 3.[8] Mustang and Kamps each contest the meaning of the agreement, but disagreement over meaning does not make the loser in breach by virtue of the advocacy. Rather, if Mustang wins and Kamps loses, Kamps simply would have no contractual remedy. The Court dismisses Counterclaim Count 1.

*Second*—declaratory judgment. In Count 2, Mustang seeks "a declaration of rights pursuant to KRS 418.060 [sic], that the inspection performed by Mustang was proper, workmanlike, and correct in all respects." DE #8, at 10 ¶ 23.[9] Mustang makes the

---

[8] The Court need not linger on the cases Mustang cited in support. They are inapposite, for the reasons Kamps stated in reply. *See* DE #17, at 3-4.

[9] Counter to Kamps's argument, *see* DE #11, at 4-6, Mustang plainly raised the declaratory judgment request only under state law. *See, e.g.*, *Robison v. Nw. Mut. Life Ins. Co.*, No. 16-98-DLB-JGW, 2017 WL 512744, at *2-3 (E.D. Ky. Feb. 7, 2017) (issuing "a binding declaration of rights under Kentucky's Declaratory Judgment Act"); *see also, e.g.*, *Brown v. Tax Ease Lien Servicing, LLC*, No. 3:15-CV-208-CRS, 2015 WL 7431044, at *13 (W.D. Ky. Nov. 20, 2015) ("The Court has broad discretion under both the Kentucky Declaratory Judgment Act, KRS Chapter 418, and the Federal Declaratory Judgment Act, 28 U.S.C.A. § 2201, to declare the rights of parties in order to terminate the uncertainty or controversy prompting the action."); *Progressive Cas. Ins. Co. v. Belmont Bancorp*, 199 F.R.D. 219, 224 (S.D. Ohio 2001) (stating that bringing a claim in federal court "for declaratory judgment under state law . . . would be proper under pendant jurisdiction"); *Texas First Nat'l Bank v. Wu*, 347 F. Supp. 2d 389, 396 (S.D. Tex. 2004) (exercising jurisdiction over a request for "declaratory judgment under Texas

request due to the "real and justiciable controversy . . . concerning the scope and interpretation of the agreement between the parties" and because Kamps has "contended that the scope of the agreement or contract between them is far broader than the plain words of the agreement would indicate." *Id.* at ¶¶ 22-23.

> KRS 418.040 provides that in any action in a court of record wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief, and the court may make a binding judgment. As a rule, the court has broad discretion to grant declaratory relief. The party seeking relief must show that an actual, justiciable controversy exists; proceedings for a declaratory judgment must not merely seek advisory answers to abstract questions.

*Mammoth Med.*, 265 S.W.3d at 209.

Critical here is that "an action for a declaratory judgment cannot be instituted to secure a determination of substantive rights *involved in a pending suit*." *Id.* at 210 (emphasis added). That is what Mustang seeks: a determination of substantive rights (that its inspection was proper under the parties' agreement and, thus, that it faces no liability) already involved in a pending suit (this case). Resolving Kamps's surviving Counts will, perforce, answer the question concerning which Mustang seeks a declaration.

---

law"). Mustang's advocacy under state *and* federal law, *see* DE #16, at 7-10, is thus even more perplexing. The Counterclaim plainly expressed no § 2201 theory. This is not a case where application of the Kentucky DJA threatens to "extend the jurisdiction of the district courts beyond the constitutional limitations." *Liberty Warehouse Co. v. Grannis*, 47 S. Ct. 282, 283-84 (1927) (holding that the district court lacked "jurisdiction" under the Kentucky DJA "to obtain an abstract judicial declaration that [a] statute exceeded the authority of Congress" but perceiving no broader problem with a federal court sitting in diversity applying a State's declaratory judgment statute, although that principle was the basis of the lower court's judgment); *see also, e.g.*, *729, Inc. v. Kenton Cnty. Fiscal Court*, 515 F.3d 485, 489 (6th Cir. 2008) (adjudicating claims brought "under 42 U.S.C. § 1983 and K.R.S. § 418.040"); *Christian Cnty. Clerk ex rel. Kem v. Mortg. Elec. Reg. Sys., Inc.*, 515 F. App'x 451, 458 n.6 (6th Cir. 2013) (rejecting reliance on KRS 418.040 on the facts of the case, but perceiving no theoretical problem with its application).

Accordingly, the Court dismisses Counterclaim Count 2. *See Mammoth Med.*, 265 S.W.3d at 211 (approvingly citing a Texas case that held it was "improper" to "use a declaratory judgment action to obtain a declaration of non-liability for an alleged breach of oral contract"); *Cullman Security Servs., Inc. v. United Propane Gas, Inc.*, No. 2014-CA-1738-MR, 2015 WL 6688709, at *5 (Ky. Ct. App. Oct. 30, 2015) ("[D]eclaratory judgment actions are not a substitute for, and indeed serve a different purpose than, breach of contract actions. Their function is prospective; that is, a declaratory judgment does not decide a present controversy—such as whether a contract has already been breached—but instead resolves justiciable controversies over present rights, duties or liabilities between parties." (citing cases)).

For these reasons, the Court entirely **GRANTS** DE #11 and dismisses the totality of Mustang's Counterclaim.

## III.  CONCLUSION

Per this analysis, the Court **GRANTS IN PART** and **DENIES IN PART** DE #9 and **GRANTS** DE #11.

This the 20th day of December, 2018.

Signed By:
*Robert E. Wier*  REW
United States District Judge